# The President's Authority to Regulate Extensions of Credit Under the Credit Control Act

Under the Credit Control Act, the President is authorized to regulate and control extensions of credit whenever he determines that such action is necessary for the purpose of preventing or controlling inflation generated by the extension of credit in an excessive volume.

Proposed executive order announcing the President's determination, and proposed implementing regulations of the Board of Governors of the Federal Reserve System imposing controls on certain kinds of consumer credit, on money market funds, and on managed liabilities, are within the authority granted the President and the Board under the Credit Control Act.

March 13, 1980

THE SECRETARY OF THE TREASURY

MY DEAR MR. SECRETARY: I am responding to your March 13, 1980, request for my opinion concerning a recommendation by the President's economic advisers that the President, by executive order, authorize the Board of Governors of the Federal Reserve System to regulate and control certain extensions of credit under the Credit Control Act, 12 U.S.C. § 1901 *et seq.* You have forwarded to me, for my information, copies of an executive order proposed by the President's advisers, and of regulations proposed by the Board to effect certain credit controls that the Chairman of the Board of Governors has informed you the Board will consider issuing if the order is executed. You have asked me whether the recommended order would constitute a proper exercise of the President's authority under the Act, and, if the President issues the order, whether the proposed credit control measures transmitted to you by the Chairman would be within the Board's authority under the Act.

Under 12 U.S.C. § 1904, the President may authorize the Board "to regulate and control any or all extensions of credit" whenever he:

> determines that such action is necessary or appropriate for the purpose of preventing or controlling inflation generated by the extension of credit in an excessive volume, . . .

The proposed executive order would announce such a determination by the President, would authorize the Board both to regulate or control three types of extensions of credit and to prescribe appropriate requirements as to the keeping of records with respect to all forms of credit,

4

and would order that such authorizations remain effective for an indefinite period and until revoked by the President. Each of these measures, as explained below, constitutes a proper exercise of the President's authority under the Act.

Although the Act includes no particular requirements for the form of the President's determination under § 1904, the incorporation of his determination in an executive order that specifies the Board's consequent authorities is entirely appropriate. Further, the President is empowered by the Act, §§ 1904, 1905, to determine what types of extensions of credit are appropriately subject to the Board's regulation and to authorize the Board to implement any or all of the regulatory measures specified in § 1905. This is evident from both the language of §§ 1904 and 1905, and from the legislative history of the Act,[1] which amply reflect Congress' intent to give the President the most flexible authority possible in mounting, through the control of credit, an appropriate attack on inflation.[2]

Finally, § 1905 provides that the Board's authority to implement credit controls shall exist "for such period of time as [the President] may determine." This authorizes the President to specify the duration, whether definite or indefinite, of any control authority, which he would be doing if he issues the order as drafted, see § 1-106.

The Chairman of the Board has informed you that, if the President executes the order, the Board will consider issuing three regulations to effect certain credit controls. These credit controls would be within the authority granted by the order. They would specifically address the following kinds of extensions of credit—consumer credit, activities of "money market funds" and similar entities, and the managed liabilities of commercial banks that are not members of the Federal Reserve System—the regulation of which is authorized by the order. Further, because the order does not limit the kinds of controls that may be imposed on these extensions of credit, the controls would be within the Board's authority if they are anywhere authorized among the controls listed in 12 U.S.C. § 1905. I conclude, as explained below, that each of the proposed controls is among the measures authorized by that section.

---

[1] See H. Rep. No. 755, 91st Cong., 1st Sess. 11 (1969); H. Conf. Rep. No. 769, 91st Cong., 1st Sess. 11 (1969); 115 Cong. Rec. 39649-697, 40239-244, *passim* (1969), especially at 39660 (remarks of Rep. Sisk); 39669, 40241 (remarks of Rep. Patman); 39676 (remarks of Rep. Barrett); 39683 (remarks of Rep. Ottinger); 39684 (remarks of Rep. Matsunaga); 39673, 39674, 40240, 40242 (remarks of Rep. Sullivan).

[2] Despite the flexibility of the authority vested both in the President and the Board of Governors of the Federal Reserve System, the Act does not transgress the constitutional prohibition against excessive delegations of legislative power. The determination required of the President, that action "is necessary or appropriate for the purpose of preventing or controlling inflation generated by the extension of credit in an excessive volume," 12 U.S.C. § 1904, provides an adequate standard against which the terms of the President's authorization and the Board's subsequent actions may be assessed. See AFL-CIO v. Kahn, 618 F.2d 784, 793 n.51 (D.C. CIR. 1979) (en banc), cert. denied. (1979); Amalgamated Meat Cutters and Butcher Workmen v. Connally. 337 F. Supp. 737, 744-763 (D.D.C. 1971) (three-judge court).

The consumer credit regulation would require that certain creditors extending certain kinds of consumer credit maintain a special non-interest bearing deposit with the Federal Reserve equal to a specified percentage of the amount by which certain types of the creditor's outstanding consumer credit would exceed a designated base. This control is designed to discourage the expansion of consumer credit. It is expressly authorized by § 1905(10), which permits the Board to prescribe "maximum ratios, applicable to any class of . . . creditors . . . of loans, of one or more types or of all types . . . (B) to assets of one or more types or of all types." In this case, the Board would be establishing maximum ratios between consumer credit loans extended in excess of the designated base and both the amount of assets available to covered creditors to support such loans, and the amount of assets to be deposited with the Federal Reserve. Such a requirement would also limit the circumstances in which credit in excess of the designated base could be extended, and would be within the Board's authority under § 1905(11) to "prohibit or limit any extensions of credit under any circumstances the Board deems appropriate."

The money market fund regulation would require such funds and similar entities to maintain a special non-interest bearing deposit with the Federal Reserve equal to a specified percentage of the amount by which the extensions of credit by them exceed their outstanding extensions of credit on a specified date. The covered entities typically act as financial intermediaries, accepting funds from investors for the purchase of "money market instruments," i.e., various instruments of indebtedness with short-term maturities that are issued by governmental units, corporations, or individuals. The intent of the regulation is to curb inflation by curbing the volume of credit available through money market funds and similar entities. Like the control to be imposed on certain extensions of consumer credit, the requirement that money market funds maintain special non-interest bearing deposits would be authorized by § 1905(10), because it would establish a maximum ratio between these funds' net extensions of credit and both their net increases in assets available for such extensions of credit and their assets to be deposited with the Federal Reserve. Such a requirement would also limit the circumstances in which money market funds may make further extensions of credit and is authorized by § 1905(11).

The managed liabilities regulation contemplates a requirement that commercial banks that are not members of the Federal Reserve System maintain a non-interest bearing special deposit with the Federal Reserve equal to a specified percentage of the amount by which the total of certain managed liabilities of the covered banks exceeds a base amount of such liabilities outstanding. The covered liabilities would include extensions of credit to the covered banks that such banks typically use to support the credit they themselves extend. The intent of the contem-

6

plated requirement is to discourage the expansion of credit by the covered institutions. It is authorized by § 1905(10), which permits the Board to "prescribe maximum ratios, applicable to any class of . . . borrowers . . . of loans, of one or more types or of all types . . . (B) to assets of one or more types or of all types." In this case, the Board would prescribe a maximum ratio between certain credit that can be extended to a bank and both its increase in assets available to support extensions of bank credit and its assets to be deposited with the Federal Reserve. The proposed control would also limit the circumstances under which credit would be extended to covered banks, and is thus within the authority of § 1905(11).

You will note that, in determining whether the proposed control measures would be within the Board's authority under the Act, I have relied exclusively on the language of the Act and on the anti-inflationary intent of the measures. Because the legislative history of the Act does not elaborate on the scope of the control provisions of § 1905 and does not suggest that Congress' intent is in any way inconsistent with the Act's plain meaning, we conclude that control measures that are covered by the plain meaning of the statute and that relate to its purpose are authorized. Each of the proposed measures meets these standards.

In sum, the executive order, if executed, will be a proper exercise of the President's statutory authority and, if the President issues the order, the proposed credit control measures will be within the Board's authority under the Act.

Sincerely,
BENJAMIN R. CIVILETTI

7